<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | Crim. No. 88-239 (DRD) |
| | : | Civ. No. 97-2034 (DRD) |
| v. | : | |
| | : | **O P I N I O N** |
| LOUIS ANTHONY MANNA | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

Mr. Louis Anthony Manna
#09211-050
FCI Fairton
P.O. Box 420
Fairton, New Jersey 08320
    Pro Se

Christopher J. Christie
United States Attorney
970 Broad Street
Newark, New Jersey 07102
    By: Joseph Gribko
        Assistant U.S. Attorney

**Debevoise, Senior District Judge**

    In this extensively litigated case Petitioner, Louis Anthony Manna, moves i) to disqualify the United States Attorney's Office of Newark, New Jersey, ii) for relief pursuant to Fed. R. Civ. P. 60(b)(6) from the June 29, 1998 judgment of the Honorable Maryanne Trump Barry denying Petitioner's petition for a writ of habeas corpus, and iii) for leave to file additional materials. The motion for leave to file additional materials will be granted, and the additional materials will be considered in connection with the other motions.

## I. <u>Background</u>

In 1989 a jury found Petitioner guilty, among other things, of RICO offenses involving predicate violations of the Hobbs Act (extortion) and the Taft-Hartley Act (bribery), organized gambling and three separate murders relating to the affairs of the Genovese Crime Family. The convictions for conspiracy to murder in aid of racketeering involved the planned murder of John and Gene Gotti, high-ranking members of the Gambino organized crime family, and Irwin Schiff in August 1987. On September 26, 1989 Judge Barry sentenced then sixty year old Petitioner to eighty years imprisonment.

The Court of Appeals affirmed Petitioner's conviction without opinion. <u>United States v. Manna</u>, 919 F. 2d 733 (3d Cir. 1990) (table). The United States Supreme Court denied Petitioner's petition for certiorari, <u>Manna v. United States</u>, 499 U.S. 949 (1991).

On April 21, 1997 Petitioner filed a petition for a writ of habeas corpus. The petitioner's principal claim was ineffective assistance of Petitioner's trial counsel, Raymond A. Brown, Esq. Subsidiary claims were misconduct by the police and/or the prosecution, including <u>Brady</u> violations. In a January 29, 1998 opinion, Judge Barry carefully analyzed and rejected the claims of ineffective assistance of counsel. She found the claims of prosecutorial misconduct unpersuasive and after consideration rejected them. The court dismissed the petition.

Petitioner moved for reconsideration. He also filed a notice of appeal and applied for a certificate of appealability. Prior to that time, through a series of Freedom of Information Act ("FOIA") document requests and lawsuits, Petitioner had obtained a vast quantity of documents, and he continued thereafter to obtain additional documents through such means. While the motion for reconsideration was pending, on three occasions (March 5, 1998, March 20, 1998, and

July 23, 1998), Petitioner submitted and requested the court to review "hundreds upon hundreds of pages of various memoranda, declarations, and exhibits submitted by petitioner" (August 3, 1999 opinion of Judge Barry at p. 3).

The first wave of documents and memoranda, submitted on March 5, 1998, purported to demonstrate "a further Brady violation and withholding of material information on the government's part" and one document purportedly showed "both a withholding of critical information concerning witness Vivian Lewis and her identification of DeSciscio as a participant in the Schiff murder, and the joint participation of the New York City police with the Newark and New York FBI" (Id. at 4). Petitioner sought to strengthen his thesis with the documents submitted on March 20, 1998. Judge Barry dealt with these contentions and also with contentions based on other documents dealing with, among other things, the government's handling of potential witnesses Tom Smith, Dennis Roman and Joe Petrizzo. She found no basis for Petitioner's claims.

Petitioner's July 23, 1998 submission consisted of a forty-seven page declaration in further support of the motion for reconsideration attached to which were hundreds of pages, (in three volumes, each several inches thick), containing all kinds of materials, including the "entire array" of documents Petitioner received pursuant to his FOIA request concerning Schiff.[1] Judge Barry accepted this material for its arguable relevance to the Brady claim raised in the petition.

---

[1] In support of Petitioner's pending Rule 60(b)(6) motion he has submitted four volumes of documents (each four inches thick) which presumably include the three volumes submitted to Judge Barry and an additional volume presumably containing additional gleanings from FOIA. He has also submitted six tape recordings reflecting conversations in Casella's Restaurant and four tape recordings reflecting document reviews with Thomas F. Smith, Joseph Petrizzo, Rocco Napoli and Dennis Roman.

Judge Barry reviewed Petitioner's contentions. She considered once again his claim that Special Agent Mullaney had falsely stated that a photograph or photo spread of DeSciscio had not been shown to Ms. Lewis and his claim that the government had falsely denied that information Detective Remo Franceschini had given to the New York City Police Department had not been shared with the government. Judge Barry once again found these claims to be baseless.

The mammoth July 23 submission raised two principal new claims. The first concerned an FBI investigation beginning in 1987 into approximately nine unsolved murders committed between 1977 and 1987 and their connection, if any, to the Genovese Family hierarchy and Vincent "Chin" Gigante. The FBI concluded that there was insufficient evidence that these murders were interrelated or ordered by the Genovese Family. Judge Barry found that these murders were not relevant to Petitioner's case and that there was no <u>Brady</u> violation for not turning over 302 forms concerning their investigation.

The other principal claim raised in the July 23 submission constituted Petitioner's contention that one or more New York FBI agents who listened to the August 1987 tapes, and importantly the August 5 1987 tape, failed to identify the speakers. This, Petitioner claimed, was information that should have been turned over to the defense. Judge Barry rejected this contention because no one who reviewed the tapes "was even remotely" familiar with any of the voices thereon, including the voice of the Petitioner. Judge Barry proceeded to analyze carefully why the 302s upon which Petitioner relied were not <u>Brady</u> material.

After completing her extensive review of the arguments and mountains of material that Petitioner submitted to her, Judge Barry concluded that he had not established that she erred in

4

January, 1998 when she held that Petitioner had failed to demonstrate ineffectiveness of his trial counsel or Brady violations. She denied the motion for reconsideration on August 3, 1999.

On February 19, 1998 Petitioner had filed a notice of appeal and applied for a certificate of appealability. On March 2, 1998, the Court of Appeals stayed Petitioner's application and appeal pending disposition of the motion for reconsideration. After denial of the motion for reconsideration, the Court of Appeals on October 31, 2000 denied Petitioner's motion for a certificate of appealability. The Supreme Court denied Petitioner's petition for certiorari, Manna v. United States, 532, U.S. 1009 (2001).

Petitioner continued to make FOIA requests and continued to receive documents in response thereto. According to his petition, on August 16, 2002 Petitioner received documentation establishing that after he had been convicted but before he was sentenced the FBI had received information (which was communicated to Judge Barry) that the Judge and United States Attorney Samuel A. Alito and Assistant United States Attorney Michael Chertoff were the subject of death threats from Petitioner. This information was not disclosed to defense counsel.

The information as received by Petitioner consisted of a serious of highly redacted copies of memoranda included as Exhibit 2 of Volume 1 of his Appendix in Support of Motion for Relief from Judgment. A July '89 memorandum from FBI New York to Director FBI/Priority and FBI Newark/Priority read in part:

> Subject: Martin Casella; Frank Daniello; Richard DeSciscio; Louis Anthony Manna; AKA Bobby Manna [redacted] AKA; [redacted] USDC Judge Maryanne Trump Barry; USA Samuel A. Alito; AUSA Michael Chertoff - Victims; AFO conspiracy; OU:NK.
>
> Renktel to Director, dated July 14, 1989.

> On July 19, 1989 [redacted] Metropolitan Correctional Center, New York City, New York advised that Louis Anthony Manna, Inmate Number 092111-050 has been visited by [redacted] . . .
>
> [redacted] Advised no records are kept of destination for outgoing mail or origin of incoming mail.  Further [redacted] records indicate AUSA/NK has subpoenaed visitors list for the month of June. [redacted] added that the type of subjects in captioned matter most often pass messages outside jail through attorneys.

A memorandum, the date of which is undecipherable, from ADIC New York to SAC Newark recited that its subject matter was Louis Anthony Manna and other inmates and USDJ Maryanne Trump Barry - victim; USA Samuel A. Alito - victim; AUSA Michael Chertoff - victim.  It referenced "AFD; Conspiracy" and recited that on July 25, 1989 the Federal Correction Institute at Otisville, New York made available correspondence and visitors lists regarding the subject inmates.

There are other memoranda concerning the investigation of the conspiracy referred to in the previously mentioned memoranda suggesting continued investigation by the FBI.  The final document in Petitioner's Exhibit 2 consists of pages ten, eleven and twelve of a larger document and this segment is entitled "Threat Assessment: Traditional Organized Crime." It includes the following:

> Louis Anthony Manna is alleged to be and, in fact, was convicted on 6/26/89 of controlling a particularly violent faction of the Genovese LCN.  The trial of Manna, et al, was an intensive effort by AUSA, Mike Chertoff and it is certainly conceivable that Manna would hold Chertoff singularly responsible for the convictions.  Likewise, Judge Maryanne Trump Barry's courtroom presence could be perceived by Manna to have been a detriment to his defense strategy.
>
> At this point, no available information exists to make an informed judgment as to Manna's continued stature within the Genovese LCN and it therefore must be assumed that he continues to maintain a position within the hererarchy (sic) of the Family.  Manna's reputation and evidence presented at his trial indicate that he is more than capable of ordering the execution of others.  Manna's conviction for

> plotting the execution of both John and Gene Gotti is basis to belive (sic) that he is capable of ordering the execution of a U.S. District Court Judge or Assistant U.S. Attorney.
>
> Mana's (sic) incarceration should not be viewed as a barrier to any continued control he may have over other Genevose members or associates . . . Additionally, other members of Manna's organization capable of commission of violent acts, continue to be under the control of Manna.
>
> Newark has made appropriate notifications to USMS, Newark, Captioned victims, and Chief USDC Judge Newark.

On September 4, 2003, Petitioner filed a motion which he characterized as a "Motion for Discovery In Connection With Proceeding Pursuant to 28 U.S.C. § 2255". Because Judge Barry had been appointed to the Court of Appeals, the motion was assigned to the Honorable William J. Martini. In his June 29, 2004 opinion, Judge Martini described Petitioner's ground for relief as follows:

> Although it is not clear how or when he came by it, an FBI report - now an exhibit to the instant motion - purportedly establishes that the FBI was apprised by some informant that Manna was involved in a plot to murder: the trial judge, Maryanne Trump Barry; and the United States Attorney, Samuel A. Alito; and the chief prosecutor, Michael Chertoff - all three of which [sic] are now Third Circuit judges. Furthermore, this FBI report was apparently communicated to Judge Barry after conviction, but prior to his sentencing. Manna argues that upon receipt of this information Judge Barry had a statutory duty to communicate this information to Defendant's counsel and to recuse herself. Manna's instant motion seeks discovery against the Government to further develop these materials. He argues that were a proper foundation developed, the Court would have cause to vacate the prior habeas petition and/or vacate the prior sentence - ostensibly imposed by a biased judge.

(June 29, 2004 Opinion at 2, 3).

In that case Petitioner argued that his motion to compel discovery was ancillary to the original habeas petition, not a successive petition. The government, on the other hand

7

characterized the motion as a new or successive habeas petition - and, therefore, beyond the jurisdiction of the district court absent certification from the Court of Appeals. Thus the court observed that the first issue to be determined was one of characterization. "Is this motion substantively a motion to hear a new habeas petition - leaving the Court with no jurisdictional basis to hear the action? Or, is the relief sought ancillary to the prior, but otherwise concluded, habeas petition first filed in 1997?" Id. at 3. The court addressed these questions in the context of the "unusual constellation of facts - alleged bias of the trial judge caused by facts brought to her attention by the Government ex parte between the time of Defendant's conviction and sentencing." Id.

The court rejected Petitioner's contention that the proceeding was not a new, second, or successive proceeding but, rather a continuation of his original habeas action, stating:

> Moreover, this action is not in any meaningful sense ancillary to the first filed, but now concluded habeas petition. Petitioner seeks through discovery evidence that Judge Barry may have been biased (or, more properly, may have appeared to have been biased) during prior proceedings. But the prior habeas petition did not seek such relief, i.e., he removal of Judge Barry, nor would the information Petitioner now attempts to elicit have aided Petitioner in developing the claims made in the prior petition. Petitioner is not seeking to use discovery to vindicate claims made in his first petition. Here the claim is new: appearance of or actual judicial bias. And here the relief sought is new: vacation of the prior habeas petition. Thus the substance of the motion is that it is part and parcel of a new habeas petition, seeking, inter alia, the vacation of the prior habeas action on a theory of judicial bias - actual or apparent.

Id. at 5.

Addressing the government's contention that the petition was a second or successive petition, leaving the Court without jurisdiction absent Court of Appeals certification, the court held:

8

> Although the Court agrees in part with the Government characterization, in that this action is not ancillary to the prior habeas action, the Court does not believe that this action must be construed as a second or successive motion as a matter of Third Circuit law . . . Here the facts alleged in support of the claim made of judicial bias, the relief sought directly in the motion (discovery), and the ultimate relief sought (vacatur of the prior habeas) are all new claims, not made in the prior habeas. In these circumstances, where none of the claims are repetitious with claims made in the prior petition, there may be no abuse of the writ. Absent abuse of the writ, Petitioner Manna's motion for discovery might be characterized as a first petition, not a second or successive petition.

Id. at 6.

Apparently the parties and the court did not address the question whether the discovery Petitioner sought was a prelude to a Rule 60(b) motion attacking the validity of the judgment that Judge Barry rendered on Petitioner's original habeas motion. On June 29, 2004 the court denied Petitioner's motion on the ground that it was barred by the 1-year limitation period imposed by 28 U.S.C. §2255(4). The information upon which he based his motion was discovered more than one year prior to the date when he filed the motion. Petitioner moved for reargument, and on October 4, 2004 Judge Martini denied the motion for the reasons set forth in the June 29, 2004 opinion.

Petitioner sought to appeal, and on April 20, 2005 the Court of Appeals denied his application for a certificate of appealability. Its order read:

> The foregoing request for a certificate of appealability is denied. A certificate of appealability may issue only on a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). We can deny a certificate of appealability on any ground with support on the record. See Szuchon v. Lehman, 273 F.3d 299, 318 n.8 (3d Cir. 2001). Because Appellant's motion to compel discovery anticipated an attack on "the manner in which the earlier habeas judgment was procured" it implicated Fed. R. Civ. P. 60(b)(6). Claims brought pursuant to Rule 60(b)(6) must be made within a "reasonable time." Appellant's claim, filed over thirteen months after the alleged judicial impropriety was discovered, was not brought within a reasonable period of time. Cf. Liljeberg v.

9

<div style="margin-left:2em">Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988) (regarding the timeliness of recusal motions in closed litigation).</div>

On August 16, 2005 Petitioner filed the instant motion.

## II. Pending Motions

A. <u>Motion to Disqualify United States Attorney's Office</u>: Petitioner's first motion is to disqualify the entire United States Attorney's Office of Newark, New Jersey (presumably including in the scope of the motion the United States Attorney's branches in Trenton and Camden). By way of background Petitioner refers to the allegations contained in his parallel motion for relief pursuant to Fed. R. Civ. P. 60(b)(6) in which he charges in great detail that in his trial and on his motions there existed "a system employed by the 'U.S. Attorney' that cast the entire proceedings into doubt, and suspicion of foul play. It has been shown that the 'U.S. Attorney' has suborned perjury, elicited false testimony, produced erroneous material to numerous Courts and violated the ethics and basic principles of upholding the sanctity of the United States Constitution." (Motion at 3). More of the details of Petitioner's allegations will be set forth in the description of his Rule 60(b)(6) motion.

Petitioner suggests that the personnel of the United States Attorney's Office will be called as witnesses as part of his proof that "the 'U.S. Attorney' and a Federal Judge cooperated in a conspiracy to deprive an American citizen of his Constitutional right to Due Process of Law." (<u>Id</u>. at 5). And further, "[t]he nature of the reality highlighted by Mr. Manna involves three Appellate Court Judges and an entire U.S. Attorney Office, concealing crucial discovery material during a trial, appellate review, habeas proceedings and now numerous FOIA litigation. This concealment yielded an 80-year prison sentence. Furthermore, with the evidence now divulged

(albeit only partly) it is also shown that this systematic concealment and suppression by the 'U.S. Attorney' was a deliberate and calculated tactic employed by the 'U.S. Attorney' to systematically hinder Mr. Manna from proving his innocence." (Id. at 7).

Petitioner contends that these same tactics continued when he brought the "threat factor" before Judge Martini and that the entire U.S. Attorney's Office is representing the interests of the past and present attorneys employed by that office and no longer its client, the public. Thus, according to Petitioner, there exists a fatal conflict of interest requiring disqualification of the entire United States Attorney's Office.

B. Rule 60(b)(6) Motion: The basis of Petitioner's Rule 60(b)(6) motion is the discovery that he describes as follows:

> On August 16, 2002, a "FOIA" request was forwarded to Mr. Manna at F.C.I. FAIRTON, through the F.C.I. FAIRTON Legal Mail Division. The materials sent through that package contained a 14 page priority "FBI" report containing material evidencing the fact that the Chief Judge John J. Gerry (who is now deceased), District Court Judge Maryanne Trump Barry and United States Attorneys Samuel A. Alito and Michael Chertoff (who are all presently Third Circuit Appellate Judges) were notified of an alleged threat to harm/kill the Judicial and Prosecution team involved in the USA v. Manna trial.

Rule 60(b)(6) Motion at p. 4.

Petitioner alleges that "Judge Barry proceeded through trial, sentencing and Mr. Manna's Title 28 U.S.C. §2255 habeas corpus proceedings, denying petition 1/29/98 and consideration for rehearing 09/04/99 without telling Mr. Manna of the alleged threat or the Judge's knowledge of it" (Id. at 5). He states that "Judge Barry was notified during Mr. Manna's trial by the government, namely; The United States Attorney's Office for Newark New Jersey and their FBI Agents . . . of an alleged threat on her life." (Id. at 7). As a result of this threat, which was not

11

communicated to the defendants or their attorneys Judge Barry was, according to Petitioner, biased against him throughout the trial and subsequent proceedings.

Petitioner recites a number of rulings during the trial which he asserts were wrong and evidence this bias. Judge Barry dealt specifically with a number of these claims in her January 29, 1998 and August 3, 1999 opinions, such as the alleged falsehoods of Special FBI Agent Mullaney; in general the failure to turn over the contents of eight boxes containing 302 forms, which Petitioner contends included important Brady material; and failure to correct misidentification of persons who were tape recorded, and specifically the persons meeting in Casella's restaurant in August 1987.

Much of Petitioner's fifty-seven page Rule 60(b)(6) motion memorandum is a regurgitation of the arguments made before Judge Barry and with which Judge Barry dealt in January 1998. In the first wave of the habeas proceeding Petitioner relied primarily upon his ineffective assistance of counsel argument, with some reliance upon asserted Brady violations. In the motion for reconsideration phase before Jude Barry Petitioner relied primarily upon prosecutorial misconduct and massive Brady violations. In the proceeding before Judge Martini Petitioner advanced the claim that because a death threat by Petitioner had been communicated to her, Judge Barry's rulings throughout the trial had been infected by bias.

In the present proceeding the claim of bias first advanced before Judge Martini is again asserted, and it is backed up by all the evidence previously submitted to support Petitioner's earlier grounds for relief. The adverse rulings and the alleged prosecutorial misconduct previously relied upon are asserted to be the result of bias and evidence of a conspiracy between Judge Barry and the prosecution

Petitioner has moved for leave to file additional materials. He asserts that he discovered this material during May, 2006.

Exhibit 1 that Petitioner seeks to introduce into the record is the May 17, 2006 trial testimony of Peter Caporino in the case of <u>United States v. Michael Crincoli</u>, Docket No. 2:05-Cr.- 6079 WJM. Caporino testified that during the course of his cooperation with the government he had a handler, one Steven Foster, with whom he became pretty good friends. During his cooperation he committed certain crimes but did not ask the FBI for assistance in connection with them. His testimony included the following:

Q. Well, you told the FBI about people that were your competition, didn't you?

A. No, not the competition, no.

Q. No?

A. No, I don't think so. Whatever they asked me about . . . it was mostly about what we're discussing here.

Q. Oh.

A. Marty Casella and what was going on there. Bobby.

Q. Bobby Manna?

A. [No verbal response].

Q. Did you have anything to do with Bobby Manna's prosecution?

A. Yeah, I guess I did, yes.

Q. Oh. And was he your friend.

A. No.

Exhibit 2 that Petitioner seeks to introduce into the record is a transcript of a portion of

13

the cross examination of Special Agent Foster in the Manna trial, in which he had testified that he believed that the individual shown in a photograph was the brother of John Derrico and that the basis of his belief was a confidential informant had looked at the photograph and thought he was John Derrico's brother.

The purpose of Exhibit 1 is to show that "an informant by the name of Peter Caporino revealed that he was integral to the Manna prosecution. This fact was never divulged to Mr. Manna or any defense attorneys." (Request to File Additional Materials at p. 16). Apparently Exhibit 2 is offered for Attorney David Ruhnke's argument to Judge Barry when Special Agent Foster was not required to identify the confidential informant: "If it's a potential witness in this case we have a right to know [his identity], because it may be a witness who's on record as providing inaccurate information to the Government."

These two exhibits will be admitted into the record.

### III. Discussion

A. Disqualification Motion: Petitioner's proposition that the entire United States Attorney's Office in New Jersey has joined three of its prior members (present Court of Appeals Judge Barry, present Supreme Court Justice Alito and present Secretary of Homeland Security Chertoff) to form a conspiracy to convict, and then prevent the exoneration of, Petitioner is preposterous and certainly is not supported by any evidence that Petitioner has submitted. The most that he can argue is that errors were made during the course of his trial, appeals, petitions and motions. He can argue that government agents were untruthful or withheld exculpatory material and that this resulted in an erroneous conviction, but the governmental conspiracy theory, will be rejected out of hand. It represents his fourth theory: first, ineffective assistance of

counsel; second, extensive Brady violations and other prosecutorial misconduct; third, bias of the trial judge arising out of possible death threats against her; and fourth, the governmental conspiracy theory.

Only the most extraordinary circumstances would justify the removal of an entire United States Attorney's Office from a case, e.g., United States v. Dyess, 231 F. Supp. 2d 493 (S.D. W. Va. 2002). Disqualification of an entire United States Attorneys Office is nearly unprecedented. See, e.g., United States v. Whitaker, 268 F.3d 185 (3d Cir. 2001).

Even the disqualification of a single United States Attorney is a "drastic measure and a court should hesitate to impose it except where necessary." United States v. Bolden, 353 F. 3d 870, 878 (10th Cir. 2003). The persons in the United States Attorney's Office who were responsible for the trial, sentencing and § 2255 petition in the Manna case are no longer with the Office, and thus even if attorney improprieties had been shown, which they have not, there would be no basis to disqualify anyone from that office from handling that case now.

The motion to disqualify the United States Attorney's Office of New Jersey will be denied.

B. Rule 60(b)(6) Motion: The first question that must be addressed is the exact nature of Petitioner's application, which he characterizes as a Rule 60(b)(6) motion. It will be recalled that Petitioner brought a § 2255 petition before Judge Barry. She decided against him, denied his motion for reconsideration (after extended proceedings) and was affirmed on appeal. That was unambiguously a first § 2255 motion, and before a second or successive § 2255 motion can be filed in the district court, it must be certified by the Court of Appeals as provided in 28 U.S.C. § 2244.

It will also be recalled that thereafter Petitioner filed an application that he styled a "Motion For Discovery In Connection With Proceeding Pursuant to 28 U.S.C. § 2255." It was occasioned by Petitioner's discovery that Judge Barry had been informed that she had received a death threat. The application was ambiguous as to whether it was simply a discovery motion as a preclude to a Rule 60(b) motion to attack Judge Barry's order denying the motion for reconsideration or whether it was a full scale § 2255 challenge. Judge Martini, to whom the motion was assigned upon Judge Barry's elevation to the Court of Appeals, treated the motion as a hybrid, neither ancillary to the prior motion for consideration nor a successive petition. He denied it as out of time. Affirming this order, the Court of Appeals treated the application as a Rule 60(b)(6) motion, subject to dismissal as untimely.

The present motion is a greatly fleshed out version of the motion before Judge Martini, relying upon the threat to Judge Barry and her asserted bias, but also relying upon the vast array of alleged governmental improprieties alleged in prior proceedings.

The Court of Appeals has spelled out the means of determining whether an application designated a Rule 60 (b) motion is truly such a motion or whether it is in fact a § 2255 application subject to § 2244's second or successive petition limitation.

> We concur, and hold that in those instances in which the factual predicate of a petitioner's Rule 60(b) motion attacks the manner in which the earliest habeas judgment was procured and not the underlying conviction, the Rule 60(b) motion may be adjudicated on the merits. However, when the Rule 60(b) motion seeks to collaterally attack the petitioner's underlying conviction, the motion should be treated as a successive habeas petition.

Pridgen v. Shannon, 330 F. 3d 721, 727 (3d cir. 2004).

Petitioner's application carries the appearance of both a § 2255 motion and a Rule 60(b)

16

motion. At great length it attacks the underlying conviction. Petitioner charges the government authorities with numerous instances of misstatements, withholding crucial evidence that would establish Petitioner's innocence and knowingly submitting false testimony to the jury. All this goes to the issue of guilt or innocence - a challenge to the underlying conviction. Even the new challenge, the trial of the case by a biased judge who failed to disclose the nature of her bias to the parties, is on attack upon the underlying conviction.

      Viewed in this light, Petitioner's motion is deemed to be brought under § 2255 and cannot be brought in this court absent a certificate of appealability issued by the Court of Appeals. Petitioner would have to establish to the satisfaction of that Court that there existed one of the circumstances set forth in § 2254 that justified a second or successive appeal.

      There are circumstances, however, that suggest that this application should be treated as a Rule 60(b)(6) motion. The substance of most of Petitioner's attack on his conviction was addressed either in his original § 2255 motion or in the motion for reconsideration submitted to Judge Barry, as supplemental by the three subsequent submissions. Most of the documents supporting the instant motion were placed before her. The motions were decided on the merits and affirmed by the Court of Appeals. The material that is new, Petitioner's more recently acquired knowledge that Judge Barry had known that she was subject to a death threat, was not part of the original § 2255 motion and the motion for reconsideration of its denial. That fact could not in any event have gone to the validity of the conviction because knowledge of the threat was not conveyed to Judge Barry until after the jury verdict.

      In this view of the pending motion, it should be regarded not as an attack on the judgment of conviction (except possibly upon the validity of the sentence imposed after Judge Barry had

been informed of the threat). Rather it should be viewed as an attack on the validity of the § 2255 motion and motion for reconsideration as infected by judicial bias. In that light the regurgitation of all the alleged trial improprieties of the government and the Judge would be mere surplusage, because the Judge had not been informed of the threat at the time of the alleged improprieties and could not have been affected by bias.

      From the petitioner's perspective there is a major problem when his application is viewed as a Rule 60(b) motion. None of the Rule 60(b) subsections apply except Rule 60(b)(6), under which he brings his motion, and the district court and the Court of Appeals have already ruled against him on that very same application. Upon essentially the same record Judge Martini held he was time barred, and the Court of Appeals ruled, specifically treating his application as a Rule 60(b)(6) motion, that Petitioner is time barred. If Petitioner was time barred when he filed his petition on September 4, 2003, he was certainly time barred when he filed his petition relying on the same grounds on August 16, 2005, three years after he received the evidence purportedly showing Judge Barry's bias. <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 863 (1988). The additional evidence that Petitioner introduced into the record through his most recent motion adds nothing that assists him. Consequently, in accordance with the Court of Appeals decision, his Rule 60(b)(6) motion must be dismissed.

### IV. <u>Conclusion</u>

      The court will grant Petitioner's motion to supplement the record with the two exhibits he has submitted. The court finds that his application is not a § 2255 motion, but that if it were, the court would lack jurisdiction to hear it because he has not obtained from the Court of Appeals a certificate of appealability. The court further finds that the motion is, as it purports to be, a Rule

18

60(b)(6) motion and as such is time barred.  The court will file an order implementing this opinion.

Dated: October 25, 2006                                **/s/ Dickinson R. Debevoise**
                                                                                                 DICKINSON R. DEBEVOISE
                                                                                                       U.S.S.D.J.